John P. Lomenzo, J.
The defendant is charged with a violation of subdivision 1 of section 45 of the Navigation Law of the State of New York in that the defendant did operate a vessel in the navigable waters of the City of Rochester at such a rate of speed as to endanger the property of another or the life and limb of another. The information alleges as follows: “ That on July 10, 1959, at about 9:40 p.m., deponent observed the above named defendant operating and navigating a forty-eight foot Cabin Cruiser bearing Ohio State License number 41W292 at the Genesee River, about two hundred fifty yards south of Elmwood Avenue Bridge in the City of Rochester, N. Y. known as part of the Barge Canal, heading southerly and proceeding at an excessive rate of speed causing swells of such intensity that moored boats were thrown upon docks nearby and submerging police docks, the property of the City of Rochester.”
*466 The witnesses for the People testified: that the river, where the police docks are located and also the point where the alleged violation occurred, is approximately 200 feet wide; that the police docks protrude into the water a distance of approximately 45 feet; that the defendant operated his vessel at that point in such a manner and at such a speed so as to create a wash with waves of two and one-half to three feet high, causing moored boats to be tossed upon and about docks nearby and causing the police docks to be submerged to some extent temporarily so that the northeast corner of the police dock became wet over an area extending three feet west and three feet south — the police docks are of a floating type approximately 12 to 18 inches off the water; that at the time of the alleged violation no other boats were in the area, and no proof was offered to show that any property damage occurred as a result of the operation by defendant of his boat or that any persons were injured. The defendant testified: that he has had 25 years of boating experience and is the owner of three large boats; that the subject boat, Jubilee, is approximately 50 feet in length, is well kept and in good mechanical condition; that this was his first trip in a boat through the Barge Canal and the Genesee River; that prior to leaving the Cleveland, Ohio, area on this particular trip he wrote ahead for and received helpful navigation publications, laws and bulletins; that at the time of the alleged violation he was traveling upstream and south in the channel of the Genesee River, and, according to the boat speedometer, not in excess of eight miles per hour, and intended when he arrived at the confluence of the Genesee River and the Barge Canal, to turn east into the Barge Canal; that at no time during the operation of the boat through this area was there any cause for him to believe that he was not operating his boat normally and prudently; that the speed at which he was traveling was not excessive, and that the minimum safe speed at which such a boat had to be operated in order to maintain control of the same was six miles per hour.
There were inconsistencies and contradictions in the proof as to the speed at which the boat was being operated at the time and whether the police dock lights were on, as well as the size and extent of the wash.
The area of the Genesee River wherein the alleged violation occurred is subject to three distinct jurisdictions, namely, Federal, State and Municipal. Sections of the United States Constitution grant to the Federal Government admiralty jurisdiction. Section 2 of article III extends the judicial power to all cases of admiralty and maritime jurisdiction and section *467 8 of article I grants to the Congress the power to regulate interstate and foreign commerce.
“ The federal government has laid down three sets of statutory regulations for ship operation in its territorial waters. They are the Inland Rules; the G-reat Lakes Rules; The Gulf River Rules. The Inland Rules apply to seagoing ships of all sorts as well as local shipping in ‘ all harbors, rivers, and inland waters of the United States, except the G-reat Lakes and their connecting and tributary waters as far east as Montreal.’ ” (Robinson, Admiralty, § 108, pp. 799-800. See U. S. Code, tit. 33.)
The Barge Canal is an avenue of interstate commerce. The Barge Canal crosses the Genesee River and the Genesee River in the area of the confluence of the canal and river is navigable. The power ^vested in the Federal Government to regulate interstate commerce involves waters of the United States which are navigable in fact so far as necessary to insure their free navigation when by themselves, or their connection with other waters they form a continuous channel for commerce among the States.
The Canal Law as well as the Navigation Law of the State of New York applies to and affects the area of the Genesee River wherein the alleged violation occurred.
“ ‘ Canals ’ shall mean the channel and adjacent state-owned banks of the inland waterways of the state constructed, improved, or designated by authority of the legislature as canals and shall include canalised rivers and lalces, [emphasis supplied] * * * canal water supply feeder channels and all appertaining structures necessary for the proper maintenance and operation of the canals.” (Canal Law, § 2, subd. 6.)
“ The superintendent of public works shall: * * * 10. Prescribe rules and regulations not inconsistent with law relating to the navigation, protection and maintenance of the canal system.” (Canal Law, § 10, subd. 10.) The proof establishes that the Genesee River from the Court Street Dam south to and including the area where the Barge Canal crosses is part of the canalized river and, therefore, is subject to the rules promulgated by the Superintendent of Public Works. Defendant’s exhibit 3 in evidence consists of a copy of rules and regulations prescribed by the Superintendent of Public Works pursuant to subdivision 10 of section 10 of the Canal Law and establishes that at the time and place of the alleged offense a pleasure boat in that area is allowed to travel at the rate of 10 miles per hour relative to land speed.
The City of Rochester acquires jurisdiction over the same waters by virtue of the provisions of subdivision 8 of section 20 *468 of the General City Law: “ Grant of specific powers. Subject to the constitution and general laws of this state, every city is empowered: * * * 8. To control and administer the water front and waterways of the city and to establish, maintain, operate and regulate docks, piers, wharves, warehouses and all adjuncts and facilities for navigation and commerce and for the utilization of the water front and waterways and adjacent property.” The Grenesee River at the point where the alleged violation occurred flows through Grenesee Valley Park, a public place located within the City of Rochester. Subdivision 3 of chapter 61 (Vol. II) of the Municipal Code of the City of Rochester as amended provides in part as follows: ‘ ‘ Public places. No person shall commit any of the following acts within said parts; * * * 13. Commit any of the following acts as to boats or canoes on park waters: * * * propel any steam, naphtha, electric or other motor boat at a speed exceeding eight miles an hour; or in such manner as to annoy or endanger the occupants of other boats or canoes; or in such manner as to cause dangerous swells at the landing platforms ”.
Subdivision 1 of section 45 of the Navigation Law of the State of New York, which the defendant is charged with violating, provides as follows: “ 1. Every master or operator of a vessel shall at all times navigate the same in a careful and prudent manner and at such rate of speed as not to endanger the property of another or the life or limb of any person. Reckless navigation of a vessel shall include operating the same in a manner which unnecessarily interferes with the free and proper use of the navigable waters of the state or unnecessarily endangers other vessels therein, or the life or limb of any person.” This section was derived from the Navigation Law of 1909 (ch. 42, § 69, as added by L. 1931, ch. 379) and was intended to prohibit reckless operation of boats and vessels on water as section 58 of the Vehicle and Traffic Law prohibits reckless driving of motor vehicles on the highways. This section of the Navigation Law was amended effective May 1,1957, by chapter 945 of the Laws of 1957. Notwithstanding the recent amendment, section 45, captioned “ Speed ”, continues to include as a basic part of the statute the terms “unnecessarily interferes” and “unnecessarily endangers ” despite the fact that in the year 1932 the Court of Appeals of this State specifically condemned such terminology as being indefinite and uncertain and, therefore, unconstitutional. (People v. Grogan, 260 N. Y. 138.) In that case the statute which came to the attention of the court was the then existing section 58 of the Vehicle and Traffic Law, which *469 read as follows: “ Beckless driving shall include driving or using any motor vehicle or motor cycle or any appliance or accessory thereof in a manner which unnecessarily interferes with the free and proper use of the public highway, or unnecessarily endangers users of the public highway
The court in reviewing the statute stated:
“ Statutes which create crimes must be definite in specifying conduct which is condemned or prohibited. They must afford some comprehensible guide, rule, or information as to what must be done and what must be avoided, to the end that the ordinary member of society may know how to comply with its requirements. 1 Laws which create crime ought to be so explicit that all men subject to their penalties may know what acts it is their duty to avoid.’ (United States v. Brewer, 139 U. S. 278, 288 * * *.)
“ How can we deal with this question of ‘ unnecessarily interfering ’ with traffic in a public highway? What is unnecessary interference? What standard have we to measure it by, known to the common law, or to any other realm of jurisprudence ? We must not leave it for the judge or jury to guess at; we are obliged to tell them something as a guide and not leave a man’s conduct to be judged solely by the whim of the hour. In driving a car along a street or highway one may stop to ask for directions, or to speak to a passer-by or to look at his tail light or examine his wheels or to assuage his thirst. All these acts may interfere with traffic and be entirely unnecessary. Can they amount to a crime because a magistrate may determine that in his judgment they unnecessarily interfered with traffic? We have many rules and regulations regarding the1 use of the highway, the violation of which constitutes an offense. These are specific requirements. We are here dealing solely with this crime which has been defined as ‘ unnecessary interference. ’ Then, too, what is ‘ unnecessarily endangering ’ the user of the public highway? This is the second crime stated in section 58. Does this mean one who drives or who uses the highway in such a reckless manner as to endanger the lives of the public generally or does it mean the use so as to endanger it for some particular person? Surely we must concede that any person driving an automobile carefully and with all the caution of a reasonably prudent person does not unnecessarily endanger other users of the public highway ” (pp. 147-148; italics in original)..
“ Without such a standard, without such a measure by which to judge the conduct of man, the criminal statutes are too vague and indefinite for enforcement; they are unconstitutional ’ ’i (p. 149; italics supplied).
*470 The court then proceeded to state the remedy required to correct the defection of legislative terms. “ Therefore, in order to render these two provisions of section 58 of the Vehicle and Traffic Law constitutional and provide for them a standard or measure of conduct, we must read the words ‘ unnecessarily interferes ’ or ‘ unnecessarily endangers ’ as ‘ unreasonably interferes ’ or ‘ unreasonably endangers, ’ which means ‘ interferes with or endangers the user of the highway through the failure to exercise reasonable care, reasonable caution or the reasonable foresight of a reasonably prudent and careful person.’ We then have some standard for the guidance of the court the same as we have in the ordinary negligence case ” (p. 149).
During the year following the decision of People v. Grogan (supra), the Legislature amended section 58 of the Vehicle and Traffic Law to read that1 ‘ reckless driving ’ ’ shall include driving a motor vehicle “in a manner which unreasonably interferes with the free and proper use of the public highway, or unreasonably endangers users of the public highway.” (L. 1933, ch. 356; italics supplied.)
The first part of subdivision 1 of section 45 of the Navigation Law contains the language that has also been declared unconstitutional. In the case of People v. Firth (3 N Y 2d 472) the court reviewed subdivision 1 of section 56 of the Vehicle and Traffic Law which stated as follows: “No person shall operate a motor vehicle or a motor cycle upon a public highway at such a speed as to endanger the life, limb or property of any person, nor at a rate of speed greater than will permit such person to bring the vehicle to a stop without injury to another or his property.” (Italics supplied.) The court ruled that the statute was unconstitutional and stated (p. 474): “We agree with the County Judge that this subdivision 1 of section 56 is too vague and indefinite to constitute a sufficient definition of criminal conduct and that it contains no sufficient standard by which a driver’s conduct may be tested. One could go further and say that the statutory verbiage is practically meaningless. We may guess at what the draftsman intended and, indeed, as we shall show in a later paragraph, there is material available to show what was intended. But that is not sufficient. For validity the statute must be informative on its face.”
Consequently this court holds the provisions of subdivision 1 of section 45 of the Navigation Law of this State to be unconstitutional for lack of definiteness and certainty.
A review of the complex, inadequate and inconsistent laws, Federal, State and Municipal, herein referred to that apply *471 to the operation of boats on waters within this State, clearly demonstrates the need for legislative scrutiny, review and action in view of the recent large increase of pleasure boating by the citizenry.
The motion of defendant to dismiss the information is granted.