Joseph W. Esworthy, J.
Betty Cummings, defendant was tried before this court without a jury on October 18, 1962, for *801 the offense of subdivision 1 of section 45 of the Navigation Law in the State of New York. At the outset counsel for defendant moved to dismiss the information on the ground the statute is unconstitutional as the penalty provided is of the grade of misdemeanor and the right to trial by jury exists. The court denied this motion and all other motions for dismissal when made either after the People’s proof or after trial. Decision was reserved by the court and briefs from counsel were requested.
The pertinent statute states as follows: ‘1 § 45. Speed and reckless operation. 1. Every master or operator of a vessel shall at all times navigate the same in a careful and prudent manner and at such rate of speed as not to unreasonably interfere with the free and proper use of the navigable waters of the state or unreasonably endanger any vessel or person.”
The essential elements of proof are:
(1) Navigation (by a master or operator) of a vessel on the navigable waters of the State
(2) In a careful and prudent manner and at such rate of speed
(3) As not to unreasonably interfere with the free and proper use of the navigable waters or unreasonably endanger any vessels or persons
(4) While other than actually competing in an authorized regatta or boat race (§ 45, subd. 3).
Let us dispose of the elements in which the People’s proof was uncontradicted, that is, 1 and 4 above, for it was shown the defendant Betty Cummings was the operator of a 14-foot outboard motorboat New York State registration, N. Y. 1616AB which vessel was being navigated on the Susquehanna River within the territory of the City of Binghamton. The question of the Susquehanna River being a navigable body of water would also appear certain by (a) the definition in subdivision 4 of section 2 of the Navigation Law and (b) in fact from the evidence of navigation and (c) by judicial notice, if necessary. (People v. Hart, 206 Misc. 490; Atkocus v. Terker, 30 N. Y. S. 2d 628.)
The proof also satisfied element four in that no regatta or boat race was authorized under section 34 of the Navigation Law (§ 45, subd. 3) at the time of the alleged violation.
As to the guilt or innocence of the defendant, the court reserved decision and any decision would depend upon the People’s proof with respect to elements numbered 2 and 3 as stated above. In the absence of any reported case the court is not unmindful that it is obligated to give the benefit of any reasonable doubt upon the law to the People and it is the function of the court to attempt to arrive at the legislative intent and to construe the act in furtherance of such intent (McKinney’s Cons. Laws of N. Y., *802 Book 1, Statutes, § 361) while at the same time give the defendant the benefit of all reasonable doubt upon the facts.
The statute in question uses the words “ in a careful and prudent manner.” (Navigation Law, § 45, subd. 1.) This mandates the standard of care required, i.e., ordinary care.
It is noted this section of the Navigation Law was formerly entitled “ Speed ”, as adopted from the Navigation Law of 1909 (L. 1909, ch. 42) by chapter 379 of the Laws of 1931. The words ‘ ‘ and reckless operation ’ ’ were added to the catchline by chapter 794 of the Laws of 1960, effective July 1, 1960 after this section was declared unconstitutional in People v. Bogner in 1959. (20 Misc 2d 465.) This latest amendment further defined reckless operation by using the words ‘ ‘ at such rate of speed as not to unreasonably interfere * * * or unreasonably endanger ”, and deleted from the statutory definition the words ‘ ‘ reckless ’ ’ and in so doing prefixed this definition by a standard of ordinary care.
Thus ordinary care is required for safe navigation which would mean adherence to established rules of navigation governing vessels generally. Compliance with these rules would evidence a careful and prudent manner of navigation. For comparison see subdivision 2 of section 102 of the Navigation Law [careful and prudent manner of operating a motorboat on the St. Lawrence River] and subdivision 3 of section 102 [reckless operation of a motorboat on the St. Lawrence River where two standards of care are established]. If the foregoing is correct, the line of cases which have developed the standard of unreasonableness under section 1190 of the Vehicle and Traffic Law — reckless operation of a motor vehicle — would by analogy not be applicable but rather those cases which have developed the rules of ordinary care similar to unreasonable and imprudent speed under section 1180 of the Vehicle and Traffic Law.
Under these rules mere proof of an accident would not be sufficient to sustain a conviction for a violation of the section in question. (See Matter of Dietrichsen v. Macduff, 280 App. Div. 1016; People v. Gaebel, 2 Misc 2d 458.) Further, the evidence must establish beyond any reasonable doubt that the defendant failed to exercise the care of the reasonably prudent person and thereby endangered other users of the water. (See People v. Roberts, 195 Misc. 172.)
However, mutual forbearance which is the supreme law of the road would apply equally well on water for both parties herein had a right to be upon the water. Likewise, it was the duty of each to conduct him or herself as a reasonably careful and prudent person would with reference to the rights of another *803 person upon the navigable waters. (Mark v. Fritach, 195 N. Y. 282.)
In the light of these principles of law let us look at the evidence which indicated
(1) The Susquehanna River was approximately 500 feet wide at the point where the two boats collided.
(2) Both boats were towing water skiers.
(3) Both boats were operating at approximately 20 to 25 miles per hour.
(4) The Murray boat was heading east approximately 100 to 150 feet from the south shore of the river and the Cummings boat was heading west approximately 125 feet from the north shore of the river so that there was at least 225 feet between the two boats when they passed each other heading in opposite directions.
(5) The point of impact was on the port side of the Murray boat and the starboard side of the Cummings boat.
The People’s proof showed the Murray boat continued at its same speed, course and distance from the south shore until just before impact when its course was changed to southeast. Cross-examination by defendant’s counsel brought out the fact that operator Murray “ looked up” just before impact and saw defendant Cummings heading right at him and he yelled but did not blow his whistle or slow his boat. However, before Murray ‘ ‘ looked up ” he had been looking ‘1 straight up the river ’ ’ which is where he should have been looking, and the failure to whistle once, let alone five times as required for a danger signal under paragraph (e) of subdivision 1 of section 41 of the Navigation Law was not only impractical, but impossible in the short time he became aware of the danger. Murray’s yelling and changing •his boat’s course to the southeast in an attempt to avoid contact with defendant Cummings’ vessel is all that any reasonable person could do. There was no duty for the Murray boat to reduce his speed for he had the right of way. (Navigation Law, § 41, subd. 2, par. [c].)
The proof with respect to defendant’s vessel shows that it altered its westerly course along the north shore in an attempt to make a 180 degree turn to an easterly course along the south shore. In so doing, the defendant maintained the approximate same speed of 20 to 25 miles per hour without slowing or stopping. The witness in the Murray boat indicated defendant was making a wide turn and this witness screamed just before collision while observing the defendant looking to the rear at her water skier who testified he was riding the waves of defendant’s boat, and, while he heard a girl scream just before impact and *804 saw the other skiers ’ tow rope, he did not see the other boat. The point of impact with respect to the two vessels was the starboard side of the Cummings’ boat and the port side of the Murray boat. The contact not only damaged both boats but injured one of the passengers in defendant’s boat.
These facts do not indicate ordinary care of a careful and prudent operator for under the general rules of navigation of vessels and under paragraph (c) of subdivision 2 of section 41 of the Navigation Law the right of way belongs to the Murray vessel and the Cummings vessel “ shall keep out of the way of the other by directing her course to starboard [right] so as to cross the stern [rear] of the other vessel, or, if necessary to do so, shall slacken her speed, or stop ”. In paragraph (d) of subdivision 2 of section 41 of the same law it states that if a vessel which is astern wishes to pass the vessel ahead on its port side she must signal two blasts on her whistle of such desire and only if the vessel ahead replies by two blasts of its whistle can she do so — for if the vessel ahead replies with five blasts of its whistle under no circumstances shall the vessel astern attempt to pass. Further, this section states “ Neither vessel shall in any case attempt to cross the bow or to crowd upon the course of the other vessel.”' No special circumstances were shown calling for a departure of these rules as evidenced by the testimony of the deputy Heller.
When these pilot rules are applied as the standard of ordinary care under the facts and circumstances of the case, clearly then the defendant Betty Cummings did not operate her vessel in a careful and prudent manner for these rules of safe navigation were disobeyed.
A mere violation of any of these rules would not in itself be enough for a conviction, but when coupled with the other cir-cumstances in that defendant did not slacken her speed in changing her course, while looking to the rear, observing her skier, and did collide with the port side of the Murray vessel also using the waters and injuring a passenger in her boat clearly sustain the People’s case of proving the defendant guilty beyond a reasonable doubt.